UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| COMENTIS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO: 4:09 CV 82 PPS-APR |
| ) | |
| PURDUE RESEARCH FOUNDATION ) | |
| and ARUN K. GHOSH, ) | |
| ) | |
| Defendants. ) | |

**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

CoMentis, Inc. ("CoMentis"), by its undersigned attorneys, alleges as follows:

**PARTIES**

1. CoMentis is a Delaware corporation with its principal place of business at 280 Utah Avenue, Suite 275, South San Francisco, CA 94080. Originally founded in 2004 as Athenagen, Inc. ("Athenagen"), the company was renamed CoMentis after its August 2006 merger with Zapaq, Inc. ("Zapaq"). References to CoMentis in this complaint include CoMentis, Athenagen, and Zapaq.

2. Purdue Research Foundation ("PRF") is a statutory body corporate formed and existing under the Indiana Foundation or Holding Companies Act of 1921, with its principal place of business at 1281 Win Hentschel Boulevard, West Lafayette, IN 47906. On information and belief, PRF is a nonprofit corporation that manages and licenses Purdue University's ("Purdue") intellectual property, accepts gifts, administers trusts, acquires property, negotiates research contracts, and performs other services helpful to Purdue. On information and belief, the Board of Trustees of Purdue have, by general resolution and/or assignment, designated PRF to administer all matters pertaining to the protection, utilization, and commercialization of Purdue's intellectual property.

1

3. On information and belief, Arun K. Ghosh, Ph.D ("Dr. Ghosh") is and at all relevant times has been a resident in this judicial district.

## JURISDICTION

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs or interest.

## VENUE

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 in that the defendants reside in and are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

6. CoMentis is a small biotechnology company with approximately 34 employees. CoMentis is focused on the research and development of drugs to treat life-threatening and debilitating diseases, such as Alzheimer's disease. CoMentis's scientists have contributed to groundbreaking discoveries in the field of Alzheimer's disease research. CoMentis does not presently have any drugs for sale on the market. Instead, CoMentis's drug candidates are still in various stages of research, development, and clinical trials.

7. Dr. Ghosh was a scientific co-founder of CoMentis's predecessor company, Zapaq.

8. On information and belief, Dr. Ghosh has been employed as a professor of chemistry at Purdue since 2005. On information and belief, Dr. Ghosh has been obligated as a Purdue employee to assign his right, title, and interest in any intellectual property he develops to Purdue and/or PRF.

**The Consulting Agreement and License Agreement**

9. Dr. Ghosh has served as a consultant to CoMentis under a Consulting Agreement that CoMentis and Dr. Ghosh entered into effective August 15, 2005 (the "Consulting Agreement"). Dr. Ghosh's consulting services included advising CoMentis with respect to chemical compounds and structures that CoMentis was developing for potential drug candidates

2

for treating Alzheimer's disease. CoMentis agreed to pay Dr. Ghosh $8,333.00 per month for these services.

10. As a condition of the Consulting Agreement, Dr. Ghosh signed a Consultant Confidentiality/Non-Compete/Non-Solicitation Agreement. Among his obligations under these agreements, Dr. Ghosh was required not to use CoMentis's confidential information, trade secrets, inventions, or intellectual property for any purpose except in the course of performing his duties to CoMentis, and not to disclose any such information to others.

11. The Consulting Agreement provides CoMentis with certain rights with respect to any intellectual property developed by Dr. Ghosh under the Consulting Agreement, either solely or in collaboration with CoMentis employees. Among CoMentis's rights is the option to a non-exclusive, paid-up, royalty-free license or an exclusive, royalty-bearing license to any such intellectual property. Dr. Ghosh, Purdue, and PRF were, and are, required to promptly furnish CoMentis with a disclosure of the intellectual property, and to perform other obligations in furtherance of or in connection with CoMentis's rights to intellectual property under the Consulting Agreement. Dr. Ghosh was, and is, required, *inter alia*, to execute all papers and otherwise assist as reasonably required to perfect CoMentis's right, title, and interest in the intellectual property.

12. On information and belief, Purdue has assigned all of its rights to intellectual property developed under the Consulting Agreement to PRF.

13. On September 15, 2006, CoMentis and PRF executed a License Agreement relating to the Consulting Agreement (the "License Agreement"). Under the License Agreement, PRF granted CoMentis an exclusive license to PRF's and Purdue's rights in patents and patent applications directed to inventions developed under the Consulting Agreement. The License Agreement includes specific financial terms in consideration for the license granted. Exhibit A to the License Agreement sets forth the patents to which CoMentis has been granted an exclusive license pursuant to that agreement (the "Licensed Patents"). The License Agreement provides

3

that PRF and CoMentis must update Exhibit A with any other patents or patent applications added as a result of CoMentis's exercise of its option under the Consulting Agreement.

14. Dr. Ghosh continued to perform consulting services under the Consulting Agreement over the course of the following several years. On approximately a monthly basis, CoMentis revealed in confidence to Dr. Ghosh confidential information and intellectual property relating to its Alzheimer's disease drug candidates. CoMentis's disclosures to Dr. Ghosh contained a substantial amount of information regarding CoMentis's specific chemical compounds and structures, including particular compounds and structures from a class of compounds known as pyrrolidines. Much of this information was the result of the research and development efforts of Geoff Bilcer, CoMentis's Senior Director (now Vice President) of Medicinal Chemistry.

15. CoMentis has taken, and continues to take, steps to ensure that this confidential information and intellectual property is not impermissibly disclosed to or used by other parties. Among other things, CoMentis requires all employees, business partners, contractors, consultants, and third parties to sign stringent non-disclosure and confidentiality agreements; has not made its confidential and trade secret information generally available to the public; marks confidential documents and materials with appropriate notices or legends; ensures that confidential or sensitive materials cannot be viewed or accessed by persons not having a "need to know" such information; limits the access of employees, contractors, and consultants to only those specific aspects or elements of a trade secret that they have a "need to know"; and employs appropriate security measures such as passwords and encryption to protect computer, network, and Internet data and communications.

**PRF Files the Patent Applications**

16. In or about February 2009, Dr. Ghosh represented to Dr. Bilcer that he had been performing his own work on chemical compounds and structures similar to those on which CoMentis had sought his advice pursuant to the Consulting Agreement, and that he had filed his own patent applications directed to those chemical compounds and structures. Dr. Ghosh

4

claimed that this work was done outside of and independent from his consulting work for CoMentis.

17. CoMentis subsequently learned that PRF had filed two provisional U.S. patent applications, No. 61/104,434 on October 10, 2008 and No. 61/175,624 on May 5, 2009, relating to pyrrolidine compounds and naming Dr. Ghosh as the sole inventor (collectively, the "Pyrrolidine Patent Applications").

18. Defendants did not furnish CoMentis with a disclosure of this intellectual property or perform any other steps to enable or further CoMentis's exercise of its option and other rights under the Consulting Agreement and the License Agreement. Instead, Defendants maintained that the Pyrrolidine Patent Applications were developed by Dr. Ghosh entirely independently of his work and consulting services under the Consulting Agreement, and were outside the scope of the Consulting Agreement and the License Agreement. PRF then proposed to license the Pyrrolidine Patent Applications to CoMentis on much less favorable terms than those contained in the Consulting and License Agreements.

19. During this time, the Pyrrolidine Patent Applications were not publicly available. Dr. Ghosh intended to induce CoMentis to rely on his representations concerning the independence of his work. CoMentis reasonably relied on his representations.

**The Binding Letter of Intent**

20. In May 2009, PRF and CoMentis began negotiations for a new license agreement, separate and distinct from the Consulting and License Agreements, pursuant to which CoMentis would receive an exclusive license to any patents issuing from the Pyrrolidine Patent Applications.

21. For several months, from May 2009 to October 2009, PRF and CoMentis conducted extensive negotiations by telephone and e-mail correspondence regarding the terms of the license agreement. PRF prepared an initial draft version of the license agreement based on its standard form of patent license agreement. The parties exchanged several rounds of revisions to the draft license and eventually reached agreement on its material terms.

5

22. By late September 2009, the parties had a draft license agreement in which substantially all of the terms were agreed upon by the parties. On Friday, October 2, 2009, PRF proposed that the parties enter into a Binding Letter of Intent to memorialize this agreement.

23. On October 6, 2009, both PRF and CoMentis signed and executed a Binding Letter of Intent. It expressly stated that "for and in consideration of the mutual covenants and the premises herein contained, the Parties, intending to be legally bound, hereby agree as follows."

24. The Binding Letter of Intent included, among other things, the following agreement: "The Parties agree to make all reasonable efforts to execute no later than October 25, 2009, a license agreement which contains the material financial and economic terms set forth in, and is in a form substantially similar to, the draft pyrollidine license agreement attached hereto as Exhibit A (the 'Pyrollidine License Agreement')." The Exhibit A referenced in and attached to the Binding Letter of Intent was a copy of the draft license agreement in which substantially all of the terms were agreed upon by the parties.

25. The Binding Letter of Intent also required PRF to disclose information to CoMentis's patent lawyers for the purpose of coordinating patent prosecution and filing strategy and facilitating CoMentis's filing of patent applications, and to take other steps to keep CoMentis informed, cooperate with CoMentis in patent prosecution, and allow CoMentis to exercise its rights with respect to prosecution of the Pyrrolidine Patent Applications.

26. On October 23, 2009, PRF and CoMentis signed and executed an Extension and Amendment to the Binding Letter of Intent that extended the date for execution of the license agreement to "no later than November 6, 2009."

27. For the next two weeks, CoMentis made numerous inquiries to PRF by telephone and e-mail about the status of the license agreement. PRF repeatedly ignored these inquiries and did not take any steps toward executing the license agreement. On November 5, 2009, with PRF having taken no steps to execute the license (e.g., after over a month, PRF had made no proposals for changes to any non-material terms or the form of license agreed upon by PRF and CoMentis in late September, and CoMentis had every reason to believe that exact form of

6

agreement was what PRF intended to sign), CoMentis demanded that PRF promptly complete the execution of the license agreement as required by the Binding Letter of Intent, or, if more time was necessary, that the parties agree to a further extension to the date for execution of the license agreement.

28.     On November 6, 2009, PRF's representative responded in an email that it was "not inclined to extend the document." In response, CoMentis again demanded that the parties immediately complete the execution of the license agreement – or, at a minimum, that PRF agree to talk with CoMentis to explain its abrupt change of position. On November 6, CoMentis signed a copy of the license agreement in the form attached as Exhibit A to the Binding Letter of Intent and provided it to PRF for PRF's signature.

29.     PRF refused to sign the license agreement. CoMentis informed PRF that, in light of this refusal, CoMentis considered PRF to be in material breach of the Binding Letter of Intent.

**CoMentis Discovers That Dr. Ghosh Misrepresented the Nature of the Patent Applications**

30.     CoMentis later learned that Dr. Ghosh's representations concerning the Pyrrolidine Patent Applications were false.

31.     On October 9, 2009, PRF filed an international patent application, No. PCT/US2009/060132 (the "'132 PCT Application"), which claimed priority benefit to the two earlier Pyrrolidine Patent Applications. As a result of publication under the Patent Cooperation Treaty, this international patent application, as well as the two Pyrrolidine Patent Applications, became publicly available (International Publication No. WO 2010/042796 A1) on April 15, 2010.

32.     On December 4, 2009, PRF filed international patent application No. PCT/US2009/066783 (collectively with the '132 PCT Application, the "PCT Applications"). This application claimed priority benefit to U.S. patent applications Nos. 61/120,174 and 61/181,350, neither of which were publicly available. This international patent application, as

7

well as the two U.S. patent applications, became publicly available (International Publication No. WO 2010/065861 A2) on June 10, 2010.

33. All of these applications are directed to and derived from, *inter alia*, confidential information that CoMentis disclosed in confidence to Dr. Ghosh under the Consulting Agreement, including specific chemical compounds and structures developed by CoMentis and revealed to Dr. Ghosh as drug candidates that CoMentis was developing for the treatment of Alzheimer's disease. In particular, these applications are directed to and derived from chemical compounds and structures for which CoMentis employees, including Dr. Bilcer, are at least coinventors.

34. On information and belief, Dr. Ghosh and PRF have filed, and continue to file, other patent applications directed to and derived from, *inter alia*, confidential information that CoMentis disclosed in confidence to Dr. Ghosh under the Consulting Agreement. On information and belief, these patent applications include chemical compounds and structures invented by at least Dr. Bilcer. On information and belief, these patent applications have not been published and/or are not yet known to CoMentis. The Pyrrolidine Patent Applications, U.S. patent application Nos. 61/120,174 and 61/181,350, the PCT Applications, and all other patent applications directed to and derived from confidential information that CoMentis disclosed in confidence to Dr. Ghosh under the Consulting Agreement, regardless of when filed, shall be referred to as the "PRF Patent Applications."

35. On information and belief, Dr. Ghosh knew his representations were false or made these representations recklessly without knowledge of their truth or falsity. On information and belief, the facts underlying the representations were within Dr. Ghosh's exclusive possession and control.

**PRF Continues to Breach Its Obligations Under the License Agreement**

36. On May 14, 2010, CoMentis informed PRF and Dr. Ghosh that, without waiving any of its rights, it was exercising its option under the Consulting and License Agreements to obtain an exclusive license to the Pyrrolidine Patent Applications, the '132 PCT Application, and

8

any related work product. CoMentis further indicated that Exhibit A to the License Agreement must be updated to include these patent applications.

37. Notwithstanding this notice, PRF has not acknowledged CoMentis's right to an exclusive license to these patent applications, nor has it updated Exhibit A to include these applications. On information and belief, PRF's refusal to honor its obligations to CoMentis is a result of its desire to license the technology, developed using CoMentis's confidential information and trade secrets, to another party on more lucrative terms.

38. In addition, Section 5.3 of the License Agreement states that "[t]he prosecution and maintenance of the Licensed Patent(s) that are Joint Patents shall be the primary responsibility of" CoMentis. On information and belief, the PRF Patent Applications were jointly invented by at least Dr. Ghosh and Dr. Bilcer and therefore constitute "Joint Patents" under the License Agreement.

39. PRF has insisted on maintaining primary responsibility for the prosecution and maintenance of the PRF Patent Applications. PRF has refused to allow CoMentis to assume these responsibilities, in breach of section 5.3 of the License Agreement.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief; Against PRF)**

40. CoMentis incorporates by reference paragraphs 1 through 39 above.

41. CoMentis seeks a declaration that it has an exclusive license to the PRF Patent Applications, and any patents that issue therefrom, together with all divisionals, continuations, continuation-in-part applications, substitutions, reissues, reexaminations, extensions, and foreign counterparts of such patents (collectively "PRF Patents") under the License Agreement, and that the PRF Patents fall within the definition of "Licensed Patent(s)" in the License Agreement.

42. CoMentis further seeks a declaration that the PRF Patents fall within the definition of "Joint Patents" in the License Agreement.

43. In the event that CoMentis is not found to have an exclusive license to the PRF Patents under the License Agreement, CoMentis seeks a declaration that it has an exclusive

9

license to the PRF Patents under the Binding Letter of Intent and/or related oral or implied-in-fact agreements or a non-exclusive license to the PRF Patents under the Consulting Agreement and/or related oral or implied-in-fact agreements.

44. An actual controversy exists regarding CoMentis's rights with respect to the PRF Patents. A judicial declaration is necessary and appropriate so that CoMentis may ascertain its rights with respect to the PRF Patents.

## SECOND CAUSE OF ACTION
### (Breach of Contract; Against Dr. Ghosh)

45. CoMentis incorporates by reference paragraphs 1 through 44 above.

46. The Consulting Agreement constitutes a valid and enforceable contract between CoMentis and Dr. Ghosh.

47. CoMentis has performed all, or substantially all, conditions to Dr. Ghosh's performance of his obligations under the contract.

48. Dr. Ghosh has breached the Consulting Agreement and related Consultant Confidentiality/Non-Compete/Non-Solicitation Agreement by, among other things, violating his confidentiality obligations, using CoMentis's confidential information and intellectual property to file the PRF Patent Applications, disclosing CoMentis's confidential information and intellectual property to others in filing the PRF Patent Applications, and failing to disclose to CoMentis intellectual property developed under the Consulting Agreement.

49. CoMentis has been harmed by Dr. Ghosh's breaches of the contract, including in ways that cannot be fully compensated by monetary damages. CoMentis is therefore entitled to injunctive relief, including specific performance of Dr. Ghosh's obligations under the contract.

## THIRD CAUSE OF ACTION
### (Breach of Contract; Against PRF)

50. CoMentis incorporates by reference paragraphs 1 through 49 above.

51. The License Agreement constitutes a valid and enforceable contract between CoMentis and PRF.

10

52. CoMentis has performed all, or substantially all, conditions to PRF's performance of its obligations under the contract.

53. PRF has breached the License Agreement by, among other things, refusing to add the Pyrrolidine Patent Applications or the '132 PCT Application to Exhibit A of that agreement.

54. In addition, PRF has breached the License Agreement by, among other things, refusing to allow CoMentis to assume primary responsibility for the prosecution and maintenance of the PRF Patents Applications as required by section 5.3 of the License Agreement.

55. CoMentis has been harmed by PRF's breaches of the contract, including in ways that cannot be fully compensated by monetary damages. CoMentis is therefore entitled to injunctive relief, including specific performance of PRF's obligations under the contract.

## FOURTH CAUSE OF ACTION
### (Breach of Contract; Against PRF)

56. CoMentis incorporates by reference paragraphs 1 through 55 above.

57. A valid and enforceable oral contract exists between CoMentis and PRF, under which PRF granted CoMentis an option to an exclusive or non-exclusive license subject to the terms of the Consulting Agreement and License Agreement, to promptly furnish CoMentis with a disclosure of any intellectual property developed under the Consulting Agreement, and to perform the other obligations set forth in the Consulting Agreement in furtherance of or in connection with CoMentis's exercise of its option under the Consulting Agreement. Alternatively, a valid and enforceable implied-in-fact contract exists between CoMentis and PRF, under which PRF has these obligations, arising out of the acts and conduct of the parties and CoMentis's good faith reliance thereon.

58. CoMentis has performed all, or substantially all, conditions to PRF's performance of its obligations under the contract.

59. PRF has breached the contract by, among other things, failing to perform the obligations set forth in the Consulting Agreement to enable or further CoMentis's exercise of its

11

option and other rights under the Consulting Agreement and the License Agreement, and by repudiating its obligation to grant CoMentis a license under the terms of the License Agreement and Consulting Agreement.

60. CoMentis has been harmed by PRF's breaches of the contract, including in ways that cannot be fully compensated by monetary damages. CoMentis is therefore entitled to injunctive relief, including specific performance of PRF's obligations under the contract.

## FIFTH CAUSE OF ACTION
(Promissory Estoppel; Against PRF)

61. CoMentis incorporates by reference paragraphs 1 through 60 above.

62. PRF promised to grant CoMentis a license subject to the terms of the Consulting Agreement and License Agreement, to promptly furnish CoMentis with a disclosure of any intellectual property developed under the Consulting Agreement, and to perform the other obligations set forth in the Consulting Agreement in furtherance of or in connection with CoMentis's exercise of its option under the Consulting Agreement.

63. PRF made these promises with the expectation that CoMentis would rely upon them.

64. CoMentis reasonably relied upon these promises to its detriment.

65. Hardship, unfairness, and injustice to CoMentis can be avoided only by the enforcement of these promises. CoMentis is entitled to damages and specific performance of PRF's promises.

## SIXTH CAUSE OF ACTION
(Trade Secret Misappropriation; Against All Defendants)

66. CoMentis incorporates by reference paragraphs 1 through 65 above.

67. Indiana has adopted, with some modifications, a version of the Uniform Trade Secrets Act, as codified at Ind. Code § 24-2-3 *et seq*. (the "IUTSA").

68. A "trade secret" is defined by the IUTSA as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to, and not

12

being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ind. Code § 24-2-3-2.

69. "Misappropriation" is defined by the IUTSA as "(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who: (A) used improper means to acquire knowledge of the trade secret; (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." Ind. Code § 24-2-3-2.

70. The confidential information and intellectual property that CoMentis revealed to Dr. Ghosh in confidence under the Consulting Agreement constitute trade secrets. CoMentis has taken reasonable steps to maintain the secrecy of its trade secrets. It has extensive controls in place to limit access to its trade secrets to only those who need to know such information and restricts the ability of such persons to use and disclose this information. CoMentis revealed its trade secrets to Dr. Ghosh only under the confidentiality obligations of the Consulting Agreement and related Consultant Confidentiality/Non-Compete/Non-Solicitation Agreement, and prominently marked its communications with Dr. Ghosh with "Confidential" or "Highly Confidential" legends.

71. Defendants have misappropriated CoMentis's trade secrets. Defendants have used and/or disclosed CoMentis's trade secrets without CoMentis's consent. On information and belief, at the time that they used and/or disclosed CoMentis's trade secrets, Defendants knew or

had reason to know that they had acquired the trade secrets under circumstances giving rise to a duty to maintain secrecy of the trade secrets.

72. CoMentis has been damaged by Defendants' misappropriation of CoMentis's trade secrets. Defendants have been and will continue to be unjustly enriched by their misappropriation of CoMentis's trade secrets. On information and belief, Defendants' misappropriation was willful and malicious, thereby justifying an award of exemplary damages.

### SEVENTH CAUSE OF ACTION
### (Breach of Contract; Against PRF)

73. CoMentis incorporates by reference paragraphs 1 through 72 above.

74. The Binding Letter of Intent, as modified by the Extension and Amendment, constitutes a valid and enforceable contract between PRF and CoMentis.

75. Pursuant to these agreements, PRF has contractually "agree[d] to make all reasonable efforts to execute no later than November 6, 2009, a license agreement which contains the material financial and economic terms set forth in, and is in a form substantially similar to, the draft pyrollidine license agreement attached" as Exhibit A to the Binding Letter of Intent.

76. PRF also agreed to disclose information to CoMentis's patent lawyers for the purpose of coordinating patent prosecution and filing strategy and facilitating CoMentis's filing of patent applications, and to take other steps to keep CoMentis informed, cooperate with CoMentis in patent prosecution, and allow CoMentis to exercise its rights with respect to prosecution of the Pyrrolidine Patent Applications.

77. CoMentis has performed all, or substantially all, conditions to PRF's performance of the foregoing obligation under the parties' contract.

78. PRF has breached the terms of the contract by, among other things, refusing to execute the license agreement and failing to make all reasonable efforts to execute the license agreement. PRF has also anticipatorily breached its obligations to keep CoMentis informed,

14

cooperate with CoMentis in patent prosecution, and allow CoMentis to exercise its rights with respect to prosecution of the Pyrrolidine Patent Applications.

79. CoMentis has been harmed by PRF's breaches of the contract, including in ways that cannot be fully compensated by monetary damages. CoMentis is therefore entitled to injunctive relief, including specific performance of PRF's obligations under the contract.

**PRAYER FOR RELIEF**

Wherefore, CoMentis prays for relief as follows:

1. Actual, incidental, and consequential damages from Dr. Ghosh and PRF, together with interest, in an amount to be proven at trial;

2. Recovery of the amounts by which Dr. Ghosh and PRF have been unjustly enriched by their wrongful conduct;

3. Punitive and exemplary damages from Dr. Ghosh and PRF, according to proof;

4. Preliminary and permanent injunctive relief, including specific performance of Dr. Ghosh and PRF's contractual obligations; an injunction against PRF licensing to other parties or otherwise encumbering the PRF Patents in a manner inconsistent with the terms and conditions of the Consulting Agreement, the License Agreement, and/or the Binding Letter of Intent; and an injunction precluding Dr. Ghosh and PRF from using CoMentis's trade secrets and any formerly trade secret information;

5. A declaration that CoMentis has an exclusive license to the PRF Patents under the License Agreement, and that the PRF Patents fall within the definition of "Licensed Patent(s)" in the License Agreement;

6. A declaration that the PRF Patents fall within the definition of "Joint Patents" in the License Agreement;

7. In the alternative, a declaration that CoMentis has an exclusive license to the PRF Patents, including under the Binding Letter of Intent or otherwise, along with an order directing PRF to cooperate with CoMentis in patent prosecution and allow CoMentis to exercise its rights with respect to prosecution of the PRF Patents under the Binding Letter of Intent, or a

15

declaration that CoMentis has a non-exclusive license to the PRF Patents, including under the Consulting Agreement;

8. CoMentis's costs and attorneys' fees in this action; and

9. Any such additional and further relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), CoMentis demands a jury trial for all issues in this case that are properly subject to a jury trial.

/s/ James W. Riley, Jr.
James W. Riley, Jr.

Eric S. Walters (*pro hac vice*)
EWalters@mofo.com
Eric C. Pai (*pro hac vice*)
EPai@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

James W. Riley, Jr.
jriley@rbelaw.com
No. 6073-49
RILEY BENNETT & EGLOFF, LLP
141 E. Washington St., Fourth Floor
Indianapolis, IN 46204
(317) 636-8000

Attorneys for Plaintiff, CoMentis, Inc.

**Certificate of Service**

       I hereby certify that on August 5, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

William P. Kealey
Email: wpk@stuartlaw.com

Heather L. Emenhiser
Email: hle@stuartlaw.com

Dan Lueders
Email: lueders@uspatent.com
       DocketDept@uspatent.com
       lsweet@uspatent.com

                                                   /s/ James W. Riley, Jr.
                                                       James W. Riley, Jr.