UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PURDUE RESEARCH FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11-cv-0061 |
| ) | |
| MORRISON & FOERSTER LLP, ) | |
| ) | |
| Defendant. ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant, Morrison & Foerster LLP ("Morrison & Foerster"), by counsel, for its Response in Opposition to Plaintiff's Motion to Remand, states the following:

### INTRODUCTION

This Court should deny PRF's Motion to Remand, because PRF's right to relief – *i.e.*, an injunction preventing Morrison & Foerster from prosecuting the '273 Patent Application and its progeny before the United States Patent & Trademark Office (the "USPTO") on behalf of its client, CoMentis, Inc.[1] – necessarily depends on the resolution of several substantial questions of federal patent law. First, federal patent law dictates the procedure for filing a patent application on behalf of the client and a co-applicant, like PRF, who "refuses to join" in the application and establishes that no duty is created in favor of the non-client co-applicant by virtue of that filing. Second, PRF's allegations regarding both the existence of a legal duty and ownership of confidential information contained within the '273 Application raise federal "inventorship" issues that this Court necessarily must resolve.

---

[1] CoMentis's interest in the invention derives from an assignment from, among others, co-inventor, Geoffrey Bilcer. [*See* PRF's Complaint, attachment]. PRF's interest derives from a purported assignment from co-inventor, Dr. Arun Ghosh. [*Id.*].

Morrison & Foerster was not – and PRF does not allege that it was – PRF's counsel for the filing of the '273 Application or for any other purpose. PRF's sole basis for the alleged existence of a fiduciary duty is Morrison & Foerster's filing **on behalf of CoMentis**. Under federal patent law, a patent application must identify all "inventors." PRF was identified as a co-applicant[2] by virtue of its purported assignment of Dr. Ghosh's interest. Under federal patent law, the identification of an inventor in a patent application does **not** alone create an attorney-client (or other fiduciary) relationship between the attorney prosecuting the application and the inventor or applicant. In other words, under federal patent law, no duty was created simply by the identification of PRF as a co-applicant in the '273 Application, as PRF has alleged. These questions of federal patent law must be resolved by this Court in connection with its determination regarding existence or non-existence of any duty running from Morrison & Foerster to PRF.

In addition, the federal patent statute and USPTO regulations provide a mechanism for the filing of a patent application where a co-inventor "refuses to join" in the application. That mechanism further clarifies that the mere identification of a co-inventor as a co-applicant does not create any duty running from the attorney prosecuting the application to the inventor or applicant. PRF's "authorization" was not required for Morrison & Foerster to file the '273 Application on behalf of CoMentis. CoMentis had a statutory and regulatory right to proceed in this manner, despite Dr. Ghosh and PRF's "refusal to join" in the '273 Application. To the extent PRF disputes application of the above principles on the ground that CoMentis's assignors are not co-inventors with a right to proceed in this manner, PRF raises an inventorship dispute, which this Court must necessarily resolve. "Inventorship" is a substantial question of federal

---

[2] The '273 Application identifies three co-applicants – CoMentis, PRF and Astellas Pharma Inc. ("Astellas"). [*See* PRF's Complaint, attachment ('273 Application cover page)].

patent law. In fact, CoMentis has invoked this procedure in connection with the '273 Application's progeny. [*See*, *infra,* p. 11 n.10].

Finally, PRF's allegation that the '273 Application improperly used "confidential" information purportedly owned by PRF raises a question regarding "inventorship" of an earlier provisional patent application – the '434 Application – to which the '273 Application claims priority benefit. The Court must necessarily resolve the question of inventorship to determine whether use of the allegedly confidential information was improper, as alleged by PRF. Again, "inventorship" is a substantial question of federal patent law.

### PROCEDURAL HISTORY AND RELATED LITIGATION

*PRF's Complaint*

PRF initiated this proceeding by filing its Complaint in this matter on October 7, 2011. PRF's 3-page Complaint alleges, in relevant part:

(1) PRF owns certain U.S. patent applications (referred to as the "PRF Patent Applications"). [Complaint, ¶ 4].

(2) On October 9, 2009, Morrison & Foerster filed patent application No. PCT2009/060273 (the "'273 Application"), identifying PRF and CoMentis, Inc. ("CoMentis") as co-applicants. [*Id.*, ¶¶ 5 & 7, Exh.].

(3) **"By filing the '273 Application purportedly on behalf of PRF as a co-applicant, Morrison & Foerster undertook a fiduciary duty to PRF."** [*Id.*, ¶ 9 (emphasis added)].

(4) The '273 Application employs "PRF-owned information" from the PRF Patent Applications, which, PRF alleges, was a trade secret – *i.e.*, confidential. [*Id.*, ¶ 6].

(5) Morrison & Foerster breached its fiduciary duties allegedly owed to PRF and misappropriated PRF's trade secret by "employing PRF's trade secret information in the '273 Application and filing the '273 Application without the knowledge or consent of PRF …." [*Id.*, ¶ 10].

In short, PRF alleges that Morrison & Foerster **owed** fiduciary duties to PRF solely by virtue of its filing of a patent application identifying PRF as a co-applicant. PRF further alleges

3

that Morrison & Foerster **breached** its fiduciary duties by filing the '273 Application. PRF's sole prayer for relief is a request "for a permanent injunction barring Morrison & Foerster from prosecuting the '273 Application."[3]

*Related Litigation*

PRF is currently involved in related litigation against Morrison & Foerster's client, CoMentis (PRF's and Astellas' co-applicant on the '273 Application), in the matter captioned *CoMentis, Inc. v. Purdue Research Foundation*, Northern District of Indiana, Lafayette Division, Case No. 4:09-CV-82 PPS-APR (the "Related Litigation"). The parties' allegations in the Related Litigation, including PRF's own allegations in its Counterclaim against CoMentis, confirm that PRF's right to relief **in this case** necessarily depends on resolution of substantial questions of federal patent law.[4]

In the Related Litigation, PRF alleges sole ownership of the invention(s) described in U.S. patent application no. 61/104,434, filed October 8, 2008 (the '434 Application), based on Dr. Ghosh's alleged inventorship of the subject matter of the '434 Application. [*see* PRF's Counterclaim, ¶¶ 1, 2, 3, 8(d), 8(e)]. PRF alleges that CoMentis improperly disclosed PRF-

---

[3] The '273 Application is (was) a "PCT application," or an international application, as indicated by its International Application Number: "PCT/US2009/060273." [*See* PRF's Complaint, ¶ 4 & attachment thereto (cover page of '273 Application)]. "PCT" stands for the Patent Cooperation Treaty. By way of procedural background, a PCT application such as the '273 Application does not itself result in the grant of a patent. Rather, the PCT application establishes a filing date in all "contracting states," and must be followed up with the step of entering into national or regional phases in order to proceed towards grant of one or more patents. The '273 Application has entered the national phase, and on April 7, 2011, CoMentis filed a national phase application in, among other jurisdictions, the United States (with the USPTO), under Serial No. 13/123,101 (the '101 Application). The '273 Application has also entered the national phase in Canada and Europe. Presumably, PRF intends that any injunction prohibiting prosecution of the '273 Application (as an international application) would apply to any national phase filings as well, including the U.S. filing – *i.e.*, the '101 Application.

[4] A copy of CoMentis's Third Amended Complaint in the Related Litigation (the "CoMentis Complaint") is attached to Morrison & Foerster's Notice of Removal as **Exhibit B** thereto. A copy of PRF's Counterclaim against CoMentis in the Related Litigation is attached to Morrison & Foerster's Notice of Removal as **Exhibit C** thereto.

4

owned confidential information contained in the '434 Application, when it filed the '273 Application. [*Id.*, ¶ 6].

In its Counterclaim in the Related Litigation, PRF seeks damages "in an amount according to proof," as well as an **injunction** preventing further prosecution of the '273 Application. [*Id.*, ¶ 12].

Although PRF's 3-page Complaint **in this matter** and its Motion for Remand attempt to describe a claim based on Morrison & Foerster's alleged misconduct in submitting the '273 Application to the USPTO, PRF's allegations in the Related Litigation confirm the true nature and scope of the dispute. PRF seeks the same remedy against CoMentis in the Related Litigation that it seeks against CoMentis's counsel, Morrison & Foerster, in this matter – an injunction against further prosecution of the '273 Application.[5] Thus, this matter is an attempt by PRF to enjoin or otherwise interfere with an inventor's attempt to prosecute a patent application – *i.e.*, PRF is attempting an end-run around the Related Litigation by seeking a state court order enjoining CoMentis's attorneys from prosecuting the '273 Application on CoMentis's behalf.[6]

## LEGAL ARGUMENT

This Court has "original jurisdiction of any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a).

---

[5] That PRF's true objective is to enjoin **any** further prosecution of the '273 Application – as opposed to merely enjoining Morrison & Foerster from prosecuting it – is further evidenced by a November 4, 2011 email from PRF's counsel in this case, responding to CoMentis's suggestion that the parties agree on substitute counsel to prosecute the '273 Application: "As set out in *PRF v. Morrison & Foerster*, PRF objects to continued prosecution of the '273 Application. A change in the identity of the prosecutor would not in itself resolve the grievances pled in that suit." A copy of William Kealey's November 4, 2011 email is attached to Morrison & Foerster's Notice of Removal as **Exhibit D** thereto.

[6] In its Motion for Remand, PRF argues that CoMentis did not allege federal question jurisdiction in the Related Litigation. [Motion for Remand, p. 6 ("Surely if Morrison believed that [the Related Litigation] presents a justiciable federal patent question, Morrison would have pled Section 1338(a) jurisdiction.")]. This ignores that *PRF's* claims in this matter, like its counterclaims in the Related Litigation, necessarily depend on resolution of questions of federal law.

For a case to "arise under" federal patent law, the plaintiff's "well-pleaded complaint" must establish either (1) that federal patent law creates the cause of action, or (2) that the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988). *See also U.S. Valves, Inc. v. Dray*, 190 F.3d 811 (7th Cir. 1999) (describing *Christianson* test and concluding that claim for breach of licensing agreement supported federal jurisdiction where court was required to construe the patent identified in the agreement).

Ordinarily, under the "well-pleaded complaint rule," the court evaluates federal question jurisdiction "by referring only to the plaintiff's complaint at the time of removal. However, if necessary, the court may also look beyond the face of the complaint (*i.e.*, the facts disclosed in the record) to determine whether removal [is] proper." *Robertson v. Baker Oil Tools, Inc.*, 2002 WL 1124903, *2 (N.D. Tex. May 23, 2002) (citing *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1561 (Fed. Cir. 1985) (explaining that "the court must consider as a whole the substance of the claim in addition to the language of the complaint, and **may also consider jurisdictional facts outside the pleadings**") (emphasis added)). *See also Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir. 1976) ("**A party may not fraudulently evade removal by drafting a complaint so that the true purpose of the lawsuit is artfully disguised**.") (emphasis added) (citing *Romick v. Bekins Van & Storage Co.*, 197 F.2d 369, 370 (5th Cir. 1952)).[7]

---

[7] In its Motion for Remand, PRF argues that its allegations against Morrison & Foerster's client in the Related Litigation, which seek to enjoin prosecution of the '273 Application, are "immaterial to ascertainment of Section 1338(a) jurisdiction in this case." [Motion for Remand, at pp. 5-7]. PRF alleges that "Morrison cites no authority for the proposition that a federal question in one case sheds light on whether a federal question pends in another case." [*Id.*, at p. 6]. In fact, the *Robertson*, *Air Products*, and *Villarreal* decisions all support review of PRF's

6

I.  **<u>Whether Morrison & Foerster owed PRF fiduciary (or any other) duties simply by filing the '273 Application which identified PRF as a co-applicant raises substantial federal questions of patent law</u>**.

Absent a legal duty owed by Morrison & Foerster to PRF, PRF's claims in this matter fail as a matter of law. PRF's sole allegation regarding the existence of any duty owed by Morrison & Foerster is that Morrison & Foerster owed such a duty by filing the '273 Application identifying PRF as a co-applicant. The source and scope of duties, if any, created by an attorney's filing of a patent application identifying a non-client co-applicant is a substantial question of federal patent law, upon which PRF's right to relief necessarily depends.

To establish that Morrison & Foerster breached its alleged fiduciary duty to PRF, PRF must prove:

(1) the existence of a fiduciary relationship;
(2) breach of the duty owed by the fiduciary to the beneficiary; and
(3) harm to the beneficiary.

*York v. Fredrick*, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011) (citing *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010)).

A.  **<u>Morrison & Foerster undertook no fiduciary duty to PRF simply by identifying PRF as a co-applicant in the '273 Application</u>.**

Regarding the existence of a fiduciary relationship – *i.e.*, the "source" of any alleged fiduciary duty owed by Morrison & Foerster to PRF – PRF alleges, in relevant part: "**By filing the '273 Application purportedly on behalf of PRF as a co-applicant, Morrison & Foerster undertook a fiduciary duty to PRF**." [Complaint, ¶ 9 (emphasis added)]. In its Motion for Remand, PRF characterizes its claim against Morrison & Foerster as alleging that Morrison & Foerster filed the '273 Application "on its behalf" but "without its authorization." [Motion for Remand, at pp. 4 ("PRF's complaint states a claim for breach of fiduciary duty based on

---

pleadings in the Related Litigation and were cited in Morrison & Foerster's Notice of Removal. [*See* Notice of Removal (Docket No. 3), ¶ 14].

7

Morrison's unauthorized actions [the filing of the '273 Application] purportedly taken on PRF's behalf."), 4 n.3 ("[A]ny attorney who purports to act on behalf of PRF must have authority from PRF to do so under common law principal-agent rules."), 7 (describing the "question" in this case as "whether Morrison has a duty under state law to refrain from actions not authorized by the person it purports to represent") & 10 ("Morrison fails to show that any substantive analysis of federal law is required for a court to determine whether Morrison can file and prosecute a patent application on behalf of PRF, without ever obtaining authority from PRF to do so.") (emphasis added)].

PRF fails to recognize that (1) Morrison & Foerster did not file the '273 Application "on its behalf" or "purporting to represent" it, (2) identification of PRF as a co-applicant created no duty running from Morrison & Foerster to PRF under applicable patent law, and (3) PRF's "authorization" was not required under applicable federal statute and regulations.  In other words, PRF's claim is **not** "a function of the law of principal-agency, … governed by state common law[,]" as PRF argues in its Motion for Remand.  [*See* Motion for Remand, at p. 4].

PRF does not allege in its Complaint that it engaged Morrison & Foerster to prosecute the '273 Application.  PRF does not allege that it sought or received legal or other advice from Morrison & Foerster regarding prosecution of the '273 Application.  PRF does not allege that it paid Morrison & Foerster anything for Morrison & Foerster's work in connection with the '273 Application.  PRF alleges **nothing** that would support the existence of an attorney-client relationship between it and Morrison & Foerster, nor does PRF allege that an attorney-client relationship existed.  Yet, PRF argues throughout its Motion for Remand that Morrison & Foerster filed the '273 Application "on behalf of" PRF and therefore undertook a fiduciary duty.  Morrison & Foerster filed the '273 Application on behalf of its client, CoMentis.  **PRF cites no**

**case law in its Motion for Remand holding that a lawyer undertakes a fiduciary or any duty to a non-client co-applicant by filing a patent application on behalf of the lawyer's client.**

37 C.F.R. § 1.41(a) requires that "[a] patent must be applied for in the name of the actual inventor or inventors." 35 U.S.C. § 111 also states that an "[a]pplication for patent shall be made, or authorized to be made, by the inventor, except as otherwise provided in this title, in writing to the Commissioner." "Even where the invention has been assigned to the company, the inventor must still be the applicant." *Sun Studs, Inc. v. Applied Theory Assoc., Inc.*, 772 F.2d 1557, 1568 (Fed. Cir. 1985).[8]

Either PRF agrees that Morrison & Foerster's filing of the '273 Application created no attorney-client or other fiduciary relationship, or the Court will be required to resolve a substantial question of federal patent law – *i.e.*, the existence and scope of a lawyer's duties owed to a non-client inventor and/or co-applicant, by virtue of the filing of a patent application identifying the co-inventor and co-applicant as required by federal statute and regulation.

In its Motion for Remand, PRF cites *Kroll v. Finnerty*, 242 F.3d 1359 (Fed. Cir. 2001), for the proposition that "issues of legal representation" do not present a federal question simply because the "representation happens to involve the practice of patent law[.]" [Motion for Remand, at p. 9]. The *Kroll* case involved an attorney's attempt to invoke federal jurisdiction

---

[8] In its Motion for Remand, PRF cites to various Indiana and 7th Circuit Court of Appeals cases for the proposition that the question of whether Morrison & Foerster was authorized to file the '273 Application on behalf of PRF is a question of state agency law. [Motion for Remand, p. 4 n.3]. PRF misses the point. The issue requiring resolution is not whether an agent breaches its fiduciary duty by taking an act without the principal's authorization. The question is whether an agency relationship – *i.e.*, a fiduciary duty – exists **at all** between Morrison & Foerster and PRF, solely by virtue of PRF's identification as a co-applicant in the '273 Application.

9

and seeking declaratory relief that several grievances filed by his clients[9] were **pre-empted by federal patent law**, because, according to the attorney, the USPTO has the authority to regulate the practice of patent law before it. *Kroll*, 242 F.3d at 1362. The court in *Kroll* rejected the attorney's pre-emption argument, stating that the USPTO's regulatory authority was not "intended to preempt the authority of states to punish attorneys who violate ethical duties under state law." *Id.* at 1364.

Morrison & Foerster does not argue that this case raises a federal question because it "happens to involve the practice of patent law." Morrison & Foerster does not argue that this case truly involves "issues of legal representation." Again, Morrison & Foerster represented CoMentis – not PRF – and PRF does not allege otherwise in its Complaint. PRF does not allege ethical violations such as those at issue in *Kroll*. Rather, Morrison & Foerster argues that federal patent law controls resolution of whether any duty – fiduciary or otherwise – is **created** between an attorney and a non-client when the attorney files a patent application that identified, by statutory and regulatory necessity, the non-client as a co-applicant. *Kroll* is one of many cases from various jurisdictions holding that not all legal malpractice cases "involving" an underlying patent raise substantial questions of federal patent law. In this case, the issue is not that a patent is "involved" – it is that PRF's sole allegation regarding existence of a legal duty is that the duty was created by Morrison & Foerster's filing of a patent application on behalf of its client, CoMentis, which identified a non-client, PRF, as a co-applicant.[10]

---

[9] The client complaints in *Kroll* alleged failure to communicate, failure to return client files, and fraudulent charges to a client's credit card. *Kroll*, 242 F.3d at 1361-62.

[10] Similarly, in its Motion for Remand, PRF cites several cases for the propositions that "a federal standard implicated in a state law cause of action is [in]sufficient to support federal question jurisdiction" and "[t]he mere presence of an ancillary federal law issue does not operate to convert a claim into a federal question." [Motion for Remand, at p. 9 n.6 & n.7]. However, the cited cases (and the above prepositions) have no relevance or application to the issues and arguments in this matter, in which the federal patent law issues are neither merely "implicated" nor

> **B.    The federal patent statute and regulations provide the mechanism for filing a patent application where a co-inventor "refuses to join" in the application.**

PRF's argument that state law agency law controls simply because Morrison & Foerster filed the '273 Application identifying PRF as a co-applicant is further refuted by the patent statute and regulations governing filings on behalf of co-inventors where one required applicant "refuses to join" in the application.

35 U.S.C. § 116 provides the following:

> If a joint inventor refuses to join in an application for patent or cannot be found or reached after diligent effort, the application may be made by the other inventor on behalf of himself and the omitted inventor. The Director, on proof of pertinent facts and after such notice to the omitted inventor as he prescribes, may grant a patent to the inventor making the application, subject to the same rights which the omitted inventor would have had if he had been joined.

*See also* 37 C.F.R. § 1.47(a) ("If a joint inventor refuses to join in an application for patent or cannot be found or reached after diligent effort, the application may be made by the other inventor on behalf of himself or herself and the nonsigning inventor.").[11]

This mechanism further clarifies that the mere identification of a co-inventor as a co-applicant, as required by federal patent law, does not create a duty running from the attorney prosecuting the application to the "non-signing inventor." PRF's "authorization" was not required for PRF to file the '273 Application on behalf of CoMentis. **PRF cannot enjoin Morrison & Foerster from representing its client, CoMentis, in its prosecution of the '273 Application, where federal patent statute and rules give CoMentis the right to proceed in**

---

are they "ancillary." Without resolution of federal patent law issues – *e.g.*, source and scope of legal duty, if any, created by attorney's filing of a patent application identifying a non-client co-applicant, and inventorship issues as applied to PRF's legal duty and confidentiality allegations – PRF has no right to relief in this case.

[11] For information purposes only, on January 11, 2012, Morrison & Foerster filed a "Petition Pursuant to 37 C.F.R. § 1.47(a) to File on Behalf of Inventor Who Refuses to Execute Application," regarding Dr. Ghosh's refusal to join in the '101 Application.

**this manner**. If the mere identification of a co-applicant in a patent application created an attorney-client relationship (or other fiduciary duty giving the non-client co-applicant the ability to prohibit or enjoin prosecution), such would be the case in **any** filing under Rule 1.47(a). PRF offers no legal support for such an illogical and unworkable proposition.

To the extent PRF disputes application of the above statute or regulation, or otherwise disputes that CoMentis's assignors are co-inventors of the '273 Application, an "inventorship" dispute exists, which this Court must necessarily resolve to determine the existence or non-existence of a fiduciary or any other duty running from Morrison & Foerster to PRF. "Inventorship" is a substantial question of federal patent law. *See Rustevader Corp. v. Cowatch*, 842 F. Supp. 171, 174 (W.D. Pa. 1993) (explaining that "a substantial federal question is raised when 'co-ownership arises from and solely on the patent law issue of inventorship'").[12]

II.  **The determination of PRF's claim of "ownership" of the allegedly confidential information contained within the '273 Application necessarily requires resolution of an "inventorship" issue – which is a substantial question of federal patent law.**

PRF's allegations in the Related Litigation regarding ownership of the confidential information contained in the '434 Application, which it alleges Morrison & Foerster (CoMentis's counsel) improperly disclosed in the '273 Application, necessarily requires resolution of issues of "inventorship" – which is a substantial question of federal patent law. In this case, PRF claims ownership of allegedly confidential information contained in earlier patent applications,

---

[12] Notably, CoMentis is granted the right to select counsel and control prosecution of joint patents under the parties' License Agreement, dated September 15, 2006. A copy of the License Agreement is attached as Exhibit 1 to PRF's Answer, filed July 30, 2010 in the Related Litigation, and it is incorporated into PRF's Counterclaim in the Related Litigation. [*See, e.g.*, PRF's Counterclaim, ¶ 7]. Section 5.3 of the License Agreement provides that CoMentis has primary responsibility for the prosecution of joint patents, subject to an obligation to "keep PRF informed." Section 5.5 provides for selection of patent prosecution counsel, and clarifies that "[c]ounsel will coordinate with all of the co-owners of the Joint Patents for prosecution and maintenance, **but [CoMentis] shall be considered the client**." (emphasis added). .

12

which it alleges Morrison & Foerster disclosed in the '273 Application. [Complaint, ¶¶ 4-6].[13] In its Counterclaim in the Related Litigation, PRF clarifies that it alleges "inventorship" of the '434 Application and, thus, ownership of information allegedly contained within the '273 Application. [PRF's Counterclaim, at ¶ 2]. PRF alleges that the '273 Application improperly asserts priority benefit "to the PRF-owned ['434 Application] and discloses PRF Confidential Information that CoMentis obtained from PRF." [*Id.*, ¶ 6]. PRF seeks to enjoin CoMentis (in the Related Litigation) and CoMentis's counsel (in this matter) from prosecuting the '273 Application. [*Id.*, ¶ 11-12].

CoMentis and PRF dispute ownership and inventorship of the invention(s) contained in the '434 Application, which was allegedly disclosed in the '273 Application. CoMentis's right to file the '273 Application (with Morrison & Foerster as its counsel) is squarely at issue in both the Related Litigation and this matter.

Because the issue of inventorship – a substantial federal question – is necessary to the Court's resolution of PRF's claims, PRF's claims arise under federal patent law, permitting removal to this Court. *See Rustevader Corp. v. Cowatch*, 842 F. Supp. 171 (W.D. Pa. 1993).

The *Rustevader* court relied on the United States Supreme Court's holding in *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800 (1988), regarding a plaintiff's efforts to "artfully plead" around federal jurisdiction:

> [M]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not "arise under" patent law. Just as "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint," so a plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions.

---

[13] Notably, PRF does not allege in this (or the Related Litigation) that Morrison & Foerster even **knew** what was in the '434 Application when the '273 Application was filed. In fact, Morrison & Foerster did not. That fact is not necessary to determining that federal question jurisdiction exists in this matter.

13

*Rustevader*, 842 F.Supp. at 172 (quoting *Christianson*, 486 U.S. at 809-10).   Thus, the *Rustevader* court recognized that, "a federal court may exercise jurisdiction where the plaintiffs' right to relief necessarily depends upon resolution of a substantial federal question, even though the cause of action was not created by federal law." *Id*. (citing *Additive Controls and Measurements System, Inc. v. Flowdata*, 986 F.2d 476, 478-79 (Fed. Cir. 1993) (examining evolution of the Supreme Court's clarification that federal jurisdiction is proper where plaintiff's cause of action necessarily depends on resolution of a substantial question of patent law)).

In *Rustevader*, the plaintiff had asserted a claim against its former employee and his co-applicants for breaching the terms of an employment agreement, including the confidentiality, assignment and noncompetition provisions of the agreement, by disclosing its confidential information in a patent application. *Id*. at 171.  The plaintiff-employer asked for an assignment of the patent, and an injunction against further disclosure of the "confidential trade secrets," among other relief.  The *Rustevader* court agreed with the plaintiff that a state law claim that happened to involve "underlying patent rights, does not arise under the patent law." *Id*. at 173. However, because the application was filed by the employee and his father (a non-employee), the court found that one of the defendants was not a party to the employment agreement and that, therefore, "the plaintiffs are necessarily creating an inventorship dispute, *i.e.* that defendant Cowatch Jr. is the sole inventor or that neither is the actual inventor." *Id*. at 173.

The *Rustevader* court explained that inventorship is "a question of whom actually invented the subject matter claimed in a patent.  Ownership, however, is the question of whom owns legal title to the subject matter in a patent…." *Id*. at 173 (quoting *Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) (reversing trial court's vacatur of the PTO Board's interference decision, which established the inventorship of the patent)).  The

14

*Rustevader* court further explained that "a substantial federal question is raised when 'co-ownership arises from and solely on the patent law issue of inventorship.'" *Id.* at 174 (quoting *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568 (Fed. Cir. 1989) (holding that a complaint raising an inventorship dispute arose under the federal patent law and was properly removed to federal court)).

Consequently, the *Rustevader* court held that the plaintiffs' "well-pleaded complaint necessarily depends on the resolution of a substantial federal question …." *Id.* at 174 ("This Court will not allow the plaintiffs to deny the defendants a federal forum when the plaintiffs' complaint contains a federal claim 'artfully pled' as a state law claim.") (citations omitted) (denying motion to remand).

Likewise, here, to succeed on its claim, PRF's allegations require that CoMentis' assignors (Bilcer and others) **not** be sole or co-inventor of the information and invention(s) described in the '434 Application, which was allegedly used in the '273 Application. Thus, PRF's claim that it is the **sole owner** of the "confidential information" alleged to be found in the '434 Application (and thus the '273 Application) raises a federal question because PRF's claims in this case "necessarily depend on the resolution of a substantial federal question" regarding the inventorship of the information contained in the '434 and '273 Applications.[14]

---

[14] In its Motion for Remand, PRF argues that the *Rustevader* decision is "inapplicable," because "[n]o inventorship issue needs to be resolved to determine common law authorization of a lawyer to act on the behalf of PRF." [Motion to Remand, at p. 4 n.2]. PRF argues that "[w]hether PRF is the sole owner or co-owner of a patented technology, **any attorney who purports to act on behalf of PRF must have authority from PRF to do so under common law principal-agent rules**." [*Id.* (emphasis added)]. Again, PRF misses the point. Morrison & Foerster never purported to act "on behalf of PRF." Morrison & Foerster filed the '273 Application "on behalf of" CoMentis. Under federal patent law, PRF – a co-inventor/co-owner – needed to be identified as a co-applicant. Morrison & Foerster contends that under federal patent law, no agency relationship and no duty arose between it and PRF by virtue of that filing. That determination, which is necessary to resolution of PRF's claim in this case, requires resolution of a substantial question of federal patent law. In addition, ownership of the allegedly confidential information contained in the '434 Application, which PRF alleges was misused in the '273 Application, turns on the issue of inventorship as to the '434 Application. In other words, multiple elements of PRF's claim in

### III.   **Plaintiff cannot satisfy the *correct* legal standard for imposition of an attorney fee award.**

In their Motion for Remand, PRF requests an award of attorney fees on the ground that "removal was unjustified under settled law." [Motion for Remand, at pp. 10-11 (citing *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000))]. This is the incorrect legal standard. Under the correct legal standard which PRF failed to identify in its Motion to Remand, no attorney fee award would be justified in this case even **if** remand is granted.

In 2005, the United States Supreme Court articulated "the proper standard for awarding attorney's fees when remanding a case to state court." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005). The Northern District of Indiana recently acknowledged and applied the U.S. Supreme Court's standard in *Argent Healthcare Fin'l Servs., Inc. v. Crawley*, 2011 WL 2604699 (N.D. Ind. June 30, 2011) (Simon, J.):

> Specifically, *Martin* held that "[a]bsent unusual circumstances, courts may award attorney's fees under section 1447(c) **only where the removing party lacked an objectively reasonable basis for seeking removal**." *Martin* added that "[i]n applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."

*Crawley*, 2011 WL 2604699, at *4 (emphasis added) (quoting *Martin*, 546 U.S. at 141). The court in *Crawley* also discussed a relatively recent 7th Circuit decision applying and clarifying the standard:

> As the Seventh Circuit has observed, "[i]n *Martin*, the Supreme Court did not have occasion to define 'objectively reasonable' because the parties agreed that the defendants' basis for removal was reasonable." However, the Seventh Circuit also has observed that, "[a]s a general rule, if at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees. By contrast, **if clearly established**

---

this case require resolution of the inventorship issue. PRF cannot avoid that federal question by "artfully pleading" its claim as a simple case of an attorney filing something on its behalf without its authorization.

16

**law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees**."

*Crawley*, 2011 WL 2604699, at *4 (emphasis added) (quoting *Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir. 2007)). The court in *Crawley* granted the plaintiff's motion for remand but denied the request for attorney fees, concluding that "while the moving parties' request for fees and costs presents a close call, no clearly established law foreclosed [defendant's] basis for removal." *Id.* at *5.

In short, then, the standard applicable to a court's fee award under section 1447(c) is that fees should be awarded only where the removing party "lacked an objectively reasonable basis for seeking removal." The Seventh Circuit has interpreted this "objectively reasonable basis" standard as meaning that "clearly established law must demonstrate that a defendant had no basis for removal" before fees should be awarded.

In this case, clearly established law demonstrates that PRF's argument for creation of an attorney-client relationship and imposition of a duty running from Morrison & Foerster to PRF is incorrect. Federal patent law requires that co-inventors be identified as co-applicants on a patent application. Federal case law instructs that the identification of an inventor on a patent application does not create an attorney-client relationship. In other words, no duty is created between a lawyer and an inventor who is, by necessity, identified on a patent application as a co-applicant. The statutory and regulatory mechanism for filing an application where a co-inventor refuses to join in the application further clarifies the issue, as described above. The cases upon which PRF relies are inapplicable. They fall well short of satisfying the standard described by the United States Supreme Court – and applied by the 7th Circuit Court of Appeals and the Northern District of Indiana – for the imposition of an attorney fee award.

>Respectfully submitted,
>
>  s/ Andrew W. Hull
> Andrew W. Hull, Attorney No. 11218-49
> Michael A. Dorelli, Attorney No. 20862-49
> HOOVER HULL LLP
> 111 Monument Circle, Suite 4400
> P.O. Box 44989
> Indianapolis, IN 46244-0989
> Tel.: (317) 822-4400
> Fax: (317) 822-0234
> Email: awhull@hooverhull.com
> mdorelli@hooverhull.com
>
> Counsel for Defendant, Morrison & Foerster LLP

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the following counsel of record via the Court's ECF System this 13th day of January, 2012:

William P. Kealey
STUART & BRANIGIN
The Life Building
300 Main Street, Suite 800
P.O. Box 1010
Lafayette, IN  47902-1010
wpk@stuartlaw.com

>  s/ Andrew W. Hull

608160